UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GRIZZLY GENERAL CONTRACTORS CORP. et. al., <br><br> Plaintiffs, <br><br> v. <br><br> KITSAP PUBLIC HEALTH DISTRICT, et. al., <br><br> Defendants. | CASE NO. CV24-5583 <br><br> ORDER |

This matter is before the Court on defendants' motions to dismiss. Dkts. 22, 23. The case arises from Kitsap Public Health District's (KPHD's) system for collecting fees from septic owners for septic inspections. KPHD requires owners to periodically hire a certified septic inspector to inspect and report on their septic system. Owners must also pay a "maintenance contract fee" to KPHD in connection with that report. KPHD adopted a policy (Policy 36) that requires inspectors to collect the fee from owners and submit it along with their report through an online portal called "OnlineRME."

Plaintiffs are Grizzly General Contractors Corp. (a licensed septic system inspector), two of its inspectors – William and Stephanie Gonzales, and a proposed class

ORDER - 1

of septic inspectors and septic owners allegedly injured by KPHD's system for maintenance contract fees. Grizzly alleges that Policy 36 illegally forces it "to act as an unpaid agent" by requiring it to collect and submit the fee. It alleges that when inspectors submit the fee, defendants (it does not specify which) embezzle the funds by "funneling" the fee into companies that defendants Eric Evans and Edwin North privately own: OnlineRME, LLC and E-Onsite LLC. Defendants Evans and North are both employees of KPHD and privately own those software companies which operate the OnlineRME portal. Finally, Grizzly alleges that KPHD and "its officials" (presumably defendants North and Evans) operate a criminal enterprise whereby they use "public office for private profit" by utilizing OnlineRME to embezzle funds.

Defendants are KPHD, its employees Eric Evans (assistant Division Director at KPHD and co-owner of Online RME) and Edwin North (Information Technology Manager KPHD and co-owner of OnlineRME), and additional owners of the parent software companies behind the OnlineRME portal – Mike Harmon and Harold Ball, and the companies OnlineRME, LLC, eOnsite LLC, and Orenco Systems Inc. Defendants argue that Grizzly lacks an injury sufficient for standing for itself and that it lacks standing to represent a class of septic owners because it is not itself a septic owner. They additionally argue Rule 12(b)(6) provides independent grounds for dismissal because the claims are implausible and allegations demonstrably false.

Because Grizzly lacks standing, the Court lacks subject matter jurisdiction and dismisses the case without prejudice. It dismisses the claims without prejudice and

without leave to amend because Grizzly cannot allege facts to resolve its lack of injury for standing or render its claims plausible under Rule 12(b)(6).

## I. BACKGROUND

Local health departments are authorized by statute to enact local rules and regulations governing onsite sewage systems, RCW § 70.05.060(3), and to establish fee schedules for licenses, permits or other services for sewage. RCW § 70.05.060(7). Consistent with that authority, KPHD requires septic owners to periodically submit maintenance reports and a maintenance contract fee for their sewage systems. *See* Kitsap County Board of Health Ordinance 2008A, "Onsite Sewage System and General Sewage Sanitation Regulations," available at www.kitsappublichealth.org/ehdocs/kcboho2008a-01, at § 13:C.15. Septic owners must hire KPHD certified septic inspectors to inspect the septic system and prepare the report. *Id*. at § 17. KPHD charges the contract fee to owners to cover the costs of enforcing sewage maintenance regulations. *Id*. at § 21.A. Pursuant to its Policy 36, KPHD requires inspectors to act as the owner's agent by collecting the fee from owners and submitting it with the report to KPHD. Dkt 1-1, Ex. 1. The district requires inspectors to use the OnlineRME portal to submit the fee and report. *Id*. If an inspector fails to submit the fee with its report, it is temporarily suspended and "locked out" of OnlineRME. Dkt. 1 at 4.

It is difficult to parse out precisely what Grizzly alleges against each defendant, but its core allegations are twofold. First, that KPHD's Policy 36 illegally forces septic inspectors to act as "unpaid agents" by requiring them to collect the contract fee from customers and submit it to KPHD through OnlineRME. Dkt. 1 at 8.

Second, Grizzly alleges that defendants KPHD and "its officials" (presumably defendants North and Evans), are running a criminal enterprise and illegally enriched by KPHD's use of OnlineRME. Its explanations of which defendants are enriched or how are unclear. They include allegations that defendants (it does not specify which) illegally keep the fees for themselves and/or funnel them "into private entities" owned by defendants North and Evans (OnlineRME, LLC and E-Onsite LLC) instead passing them to KPHD. Dkt. 1 at 3, Dkt. 30 at 8. Grizzly also alleges that OnlineRME charges septic inspectors a "per use fee" for each time it submits a fee. Dkt. 1 at 9. It alleges that North and Evans use their public office for private profit by "pushing" KPHD to use OnlineRME without considering competitors. *Id*. ¶ 6.9.

Grizzly asserts seven claims alleging that defendants violated (1) the U.S. Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1964, *et. seq.*; (2) The U.S. Civil Rights Act of 1871, 42 U.S.C. §1983, *et. seq.*; (3) The U.S. Trafficking Victims Protection Reauthorization Act of 2008, 18 U.S.C. §1595 (a); (4) Washington State's Criminal Profiteering Act, RCW 9a.82; (5) Washington State's Consumer Protection Act, 19.86, *et. seq*, and committed (6) Intentional Interference with Prospective Economic Advantage, Inducing Breach of Contract; and (7) Fraudulent Misrepresentation. Dkt. 1.

Defendants bring two interrelated motions to dismiss Grizzly's claims. The first is by KPHD, Eric Evans, and Edwin North, Dkt. 22 (KPHD motion); and the second by defendants Eric Evans, Edwin North, Mike Harmon, E-Onsite LLC, and OnlineRME LLC., Dkt. 23 (OnlineRME motion). They make largely the same arguments, with the

key distinction that KPHD's motion addresses claims alleged against Evans and North in their public capacities, while OnlineRME's motion addresses those claims made against Evans and North in their private capacities.

As a threshold matter, all defendants argue that Grizzly lacks standing because it lacks an injury in fact. They argue that Grizzly fails to allege facts showing that collecting or submitting the fee creates extra expense beyond what Grizzly expends to complete its inspection and report. Dkt. 22 at 6. They also argue Grizzly also lacks standing to represent septic owners' alleged injuries because it is not a septic owner. Dkt. 23 at 10. Defendants additionally argue that Federal Rule of Civil Procedure 12(b)(6) provides independent grounds to dismiss because Grizzly's claims are either legally unsupportable, insufficiently plead, or both. On the merits of the allegation that defendants embezzled the fees, defendants argue that the exhibit attached to the complaint of the OnlineRME fee submissions reveals that the KPHD received the fee. Dkt. 23 at 2 (citing Dkt. 1-1, Ex. 16). Defendants additionally request that that the Court take judicial notice of the contract between OnlineRME and KPHD which shows that KPHD did not pay any money to require use of the application. That request is granted. Fed. R. Evid. 201; s*ee Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2011).

The issues are addressed in turn.

## II. DISCUSSION

**A.    Grizzly lacks standing**

Defendants argue that Grizzly lacks standing because it cannot show how KPHD's Policy 36 nor the alleged embezzlement injure it. Dkt. 22 at 6. If submitting the contract

maintenance fee "involves nothing more than the click of a computer mouse," defendants argue it is insufficient. *Id*. at 8. They contend that Grizzly fails to allege facts showing that adding the fee to septic owners' bill creates extra work or expense beyond what Grizzly expends to complete its inspection and report. Dkt. 22 at 6. Even for the times that Grizzly was allegedly "locked out" of OnlineRME, defendants contend that Grizzly fails to allege that the lockout prevented them from providing services to clients or otherwise harmed them. *Id*. at 7

Grizzly responds that defendants' standing argument "is anemic" and that its "allegation of money damages, loss of due process by being locked unpaid labor [sic]," provides "more than a reasonable inference to damage to person and business that warrants judicial relief." Dkt. 29 at 10–11. It argues that "a violation of a constitutional right can amount to damages, specifically nominal damages, even if no actual damages are proven." Dkt. 29 at 10. Its complaint asserts that "Policy 36 places significant financial burden and labor upon septic providers" in "billing, postage, banking, travel time, accounting liability and oftentimes collections that for years that septic providers have never been compensated for[.]" Dkt. 1, ¶ 6.17. It provides the following math to articulate the financial injury from Policy 36:

> The financial impact this has had only on Grizzly Septic is colossal. For example, the hourly rate of $145.00 per filing fee, plus $25.00 for Grizzly's billing equals $170.00 per fee. The average customer per year is 300 wherein multiplied over an 20 year period equals $6,000.00 in fees collected x $170.00 equals $1,020,000.00.

*Id*. ¶ 6.18. The complaint also asserts that Grizzly suffered a "total of 244 days of suspension and being placed on a removal list for Septic Inspector services" from the

ORDER - 6

1 | times it failed to submit the fee. *Id*. ¶ 6.20. It argues it suffered these "lockouts" "without
2 | due process of law" which violates its Fourth, Fifth and Fourteenth Amendment rights.
3 | *Id*. ¶ 6.19.

4 | It is fundamental law that if the plaintiff lacks standing, the Court lacks subject
5 | matter jurisdiction and must dismiss the claims under Federal Rule of Civil Procedure
6 | 12(b)(1). *See Shulman v. Kaplan*, 58 F.4th 404, 408 n.1 (9th Cir. 2023). To establish
7 | standing, a plaintiff must demonstrate three elements: (1) an injury-in-fact via "an
8 | invasion of a legally protected interest which is (a) concrete and particularized, and (b)
9 | actual or imminent, not conjectural or hypothetical;" (2) causation— that the injury is
10 | fairly traceable to the alleged conduct of the defendants, and (3) redressability—that the
11 | injury likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife,* 504 U.S.
12 | 555, 560, (1992) (internal citations and quotations omitted). At the pleading stage, "the
13 | plaintiff must 'clearly . . . allege facts demonstrating' each element [of Article III
14 | standing]." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*,
15 | 422 U.S. 490, 518 (1975)). Where, as here, the challenger asserts that the allegations are
16 | facially insufficient to invoke jurisdiction, the Court considers only the allegations in the
17 | complaint, and assumes their truth. *Safe Air for Everyone v. Meyer,* 373 F.3d 1035 (9th
18 | Cir. 2004).

19 | Grizzly does not clearly allege facts to show that Policy 36 injures it. Its math
20 | purporting to explain the "colossal" financial impact is indecipherable. *Id*. ¶ 6.18. Grizzly
21 | makes no attempt to clarify how much of that cost is limited to the submission of the fee
22 | as opposed to the cost to submit its own report. Furthermore, its concession that it

submits the fee online (Dkt. 1, ¶ 6.15) undermines its argument that "postage, banking, [and] travel time" were part of its financial injury. Dkt. 1, ¶ 6.17. Grizzly's assertion that lockouts from OnlineRME "effectively affect[ed] their livelihood" is conclusory and lacks the factual fodder necessary for a concrete injury. Even if the Court assumes that defendants embezzle the fees, Grizzly still cannot show it is harmed by the loss of money it did not pay or expect to earn. Nor can it explain how Policy 36, which applies to all inspectors, hurts its business prospects with septic owners who must pay the fee to KPHD regardless of which inspector collects it.

Grizzly's broader argument that KPHD "illegally" forces it to collect the fee because RCW 84.56.035 mandates that only county treasurers can collect it also fails to constitute an injury. Dkt. 1, ¶ 6.6. RCW 84.56.035 provides "A local government authorized both to impose and to collect any … charges *may* contract with the county treasurer… to collect [them]." (Emphasis added). "May" is permissive language. It does not prohibit KPHD from requiring septic inspectors to collect the fee associated with the septic report. And requiring septic inspectors to collect and submit the fee is plainly within the regulatory authority of KPHD. *See* RCW § 70.05.060(7) (powers and duties of local boards of health include the ability to establish fee schedules).

Finally, Grizzly cannot manufacture standing by purporting to represent a class of septic owners and borrowing their alleged injury. Grizzly is not itself a septic owner. It makes no to attempt to argue third party standing, nor could it.

Because Grizzly lacks an injury sufficient for standing, the Court does not have subject matter subject matter jurisdiction and dismisses the case without prejudice.

ORDER - 8

Because the Court is persuaded that Grizzly cannot possibly resolve its standing issues nor the pleading defects explained below, it dismisses the case without prejudice and without leave to amend.

**B.      Grizzly has failed to plausibly allege facts supporting its claims.**

Dismissal under rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A pleading must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the Court must accept as true the pleading's well-pleaded facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to dismiss. *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). "A [party]'s obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

Claims of fraud require more. Rule 9(b) mandates that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Plaintiffs must plead "the who, what, when, where, and how' of the misconduct charged.'" *Bes v. Ciba-Geigy Corp.,* U.S.A., 317 F. 3d 1097, 1106 (9th Cir. 2003).

On a 12(b)(6) motion, a district court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

**1.    Grizzly fails satisfy the requisite elements for RICO (Count I).**

Grizzly alleges that defendants violated RICO through "multiple related acts of embezzling public funds for private profit." Dkt. 1 at 11. Although it is unclear exactly which defendants it accuses of violating RICO, Grizzly singles out KPHD and defendant Evans. Grizzly alleges that Evans "engaged in knowingly culpable conduct with the requisite intend to defraud and profit from Septic Inspectors and Washington State Consumers." *Id*. It then alleges that "[d]efendants used and invested income that was derived from a pattern of racketeering activity in an interstate enterprise." *Id*.

Defendants argue that Grizzly fails to meet any of the requisite elements for a RICO claim. Dkt. 22 at 10; Dkt. 23 at 7. They assert because the alleged embezzling is the only connection between the defendants, it is insufficient to establish an "enterprise." Dkt. 22 at 11. They argue Grizzly also fails to show the requisite effect on interstate commerce. Because both points are correct, the Court does not reach the remainder of their arguments identifying deficiencies with the RICO claim.

To state a plausible RICO claim plaintiffs must satisfy five elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's 'business or property.'" *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C. §§ 1964(c), 1962(c)). An "enterprise" is an entity or "group of persons associated together for a common purpose of engaging in a

course of conduct." *U.S. v. Turkette*, 452 U.S. 576, 583 (1981). Merely pleading a pattern of racketeering activity is not sufficient to establish an enterprise because "[t]he 'enterprise' is not the 'pattern of racketeering activity', it is an entity separate and apart from the pattern of activity in which it engages." *Id.* Additionally, "[e]ach of RICO's substantive prohibitions requires proof of an enterprise that is 'engaged in, or the activities of which affect, interstate or foreign commerce.'" *RJR Nabisco v. European Cmty.*, 579 U.S. 325, 344 (2016) (citing §§ 1962(a), (b), (c)).

Grizzly fails to show the existence of an enterprise, let alone one that affects interstate commerce. Even if the allegations of embezzlement were both plausible and predicate acts under RICO, embezzlement is the only alleged connection between the defendants. This is insufficient to establish an "enterprise." *See Williams v. PRK Funding Servs.*, 2018 U.S. Dist. LEXIS 112780 (W.D. Wash. 2018) at *5. Grizzly's attempt to show that the alleged activity affects interstate commerce by arguing that contract fees are remitted across state lines through OnlineRME fails. Dkt. 1, ¶ 6.24. Exhibit 14 to the complaint shows that the KPHD, which is in Washington, issued online invoices exclusively to Washingtonians. The fact that OnlineRME was originally an Oregon entity before it was dissolved in 2020 and re-established as a Washington entity is insufficient to show that the alleged activity affects interstate commerce. Dkt. 1, p. 4, l. 15.

### 2. Grizzly fails to state a § 1983 claim (Count II).

Grizzly alleges that defendants, "while acting under color of law, violated 42 U.S.C. § 1983" because they "deprived Plaintiffs of their liberty and property right in violation of their Fourth, Fifth and Fourteenth Amendment due process rights." Dkt. 1, ¶¶

7.12, 7.13. It alleges that "KPHD failed to make any administrative disposition of Plaintiffs' claim" and that it "accordingly" filed a complaint here against KPHD, Evans, North, Harmon, and Bell "in their individual capacities" for violating § 1983 among other claims. *Id*. ¶ 7.10.

As an initial matter, Grizzly's allegation that defendants "violated § 1983" is not cognizable. "One cannot go into court and claim 'a violation of § 1983'—for § 1983 by itself does not protect anyone against anything." *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). It does not create any substantive rights. § 1983 is instead merely "a vehicle for enforcing individual rights secured elsewhere, most typically in the United States Constitution." *Id*.

KPHD's motion concedes that it, Evans, and North "may have been acting under the color of state law," but argues that Grizzly fails to plausibly allege that any defendant deprived it of its liberty or property. Dkt. 22 at 13. Evans and North argue that even if they did violate Grizzly's constitutional rights, they are entitled to qualified immunity because Grizzly did not show that they violated a "clearly established' right. *Id*. at 14.

Section 1983 "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory...[.]" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924, 1 (1982) (quoting 42 U.S.C. § 1983).

Grizzly does not plausibly allege how or when any defendants violated its constitutional rights under the color of law, and is similarly vague about who committed the violations. The Court cannot construct an argument for it. *See Greenwood v. FAA*, 28

F.3d 971, 977 (9th Cir. 1994) ("[J]udges are not like pigs, hunting for truffles buried in briefs.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam)). Because Grizzly fails to plausibly allege a claim for relief under § 1983, it does not address the remainder of defendant's arguments relating to count II.

### 3. Grizzly fails threshold requirements for its TVPA claim (Count III).

Grizzly's claim that defendants violated the Trafficking Victims' Protection Act (TVPA), 18 U.S.C. §1595 is difficult to follow. Dkt. 1 at 12. It appears to argue that KPHD's requirement that it collect and submit the contract fee constitutes "forced labor." *Id*. at ¶7.17. Defendants correctly argue that § 1589 requires an allegation that labor was procured through force, restraint, or threats of harm, abuse of the legal process, or restraint, none of which Grizzly alleges. Dkt. 22 at 15; Dkt. 23 at 9, 11. Grizzly replies that this argument is "hogwash!" and that its "licenses and ability to be compensated was abridged by illicit actions taken by Defendants." Dkt. 29 at 17; Dkt. 30 at 13.

Because Grizzly alleges forced labor, its claim is governed by § 1589. This section prohibits obtaining the labor or services of a person "by means of the abuse or threatened abuse of law or legal process [.]" 18 U.S.C. §1589(a)(3). Grizzly's failure to allege defendants utilized any of the methods § 1589 prohibits to procure its labor to collect and submit the contract fee is fatal to its claim. The fact that Grizzly's participation in the system for submitting its report and the fee is plainly voluntary further undermines its claim. *See Taylor v. Salvation Army Nat'l Corp*., 110 F.4th 1017, 1031 (7th Cir. 2024) ("given the voluntary nature of participation in the program, it is difficult to see how [the

defendant] could have harbored" the requisite intent to make plaintiffs believe they risked "serious harm" by failing to comply with requirements).

### 4. Grizzly does not allege a predicate for profiteering (Count IV).

Grizzly alleges that defendants Evans, North, Ball and Harmon "violated Washington State's Criminal Profiteering Act, RCW 9a.82 by collecting an unlawful debt in violation of RCW 9a.82.45, leading organized crime in violation of RCW 9A.82.060, use of proceeds for criminal profiteering in violation of RCW 9A.82.080." Dkt. 1 at ¶ 7.19. Defendants argue that Grizzly does not allege conduct that violates any of those statutes. Dkt. 22 at 17–18; Dkt. 23 at 12.

Defendants are correct. RCW § 9A.82.045 limits its definition of unlawful debt to those incurred from horse racing, gambling, or a loan where the interest rate is at least twice the permitted rate allowed under state or federal laws relating to usury. RCW 9A.82.010(21). Grizzly does not allege any facts to fit this definition. To allege a claim for "leading organized crime" under RCW 9A.82.060, Grizzly must plead three or more people engaged in a pattern of "criminal profiteering." The statute defines criminal profiteering as crimes "punishable as a felony and by imprisonment for more than one year," 46 predicate violations are listed at RCW § 9A.82.010(4). Grizzly does not allege any defendants committed any such predicate offense.

Grizzly's claim for use of proceeds for criminal profiteering in violation of RCW 9A.82.080 fails for similar reasons. RCW § 9A.82.080(1)(a) prohibits using proceeds from criminal profiteering to invest in real property (among other things) and from acquiring or maintaining an interest in an enterprise through criminal profiteering

ORDER - 14

activity. Grizzly again fails to allege that the defendants engaged in any of the 46 enumerated crimes that qualify as criminal profiteering, let alone that they used any proceeds in a prohibited manner.

**5.  Grizzly fails to state a claim for a violation of the Consumer Protection Act (Count V).**

Grizzly alleges that defendants have "engaged in false and misleading statements to Washington State Consumers" in violation of the Consumer Protection Act (CPA), RCW 19.86. Dkt. 1, ¶ 7.22. Defendants argue that not only does Grizzly fail to specify any false or misleading statements, but it fails to allege that any statement was made to Grizzly or that it suffered an injury as a result, and thus lacks standing to bring the claim. Dkt. 23 at 13; Dkt. 22 at 18. Defendants also correctly observe that Grizzly cannot represent a class of septic owners because it fails to allege that it is a member of that purported class. Dkt. 23 at 14. Grizzly replies that this argument "is absurd because Plaintiffs Complaint and illustration show continuous false and misleading actions that affect Washington State residents and consumers." Dkt. 30 at 16.

"To prevail on a CPA action, the plaintiff must prove (1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation.'" *Greenberg v. Amazon.com, Inc.,* 553 P.3d 626, 638 (Wash. 2024) (internal quotations and citations omitted). Grizzly's claim is nothing more than a "formulaic recitation" of the elements of a CPA devoid of any factual fodder. Its failure to specify deceptive statement or act as well as its failure to allege how it was injured as a result of the same is fatal to its CPA claim.

### 6. Grizzly fails to plausibly allege an actionable interference with a contract or business expectancy (Count VI).

Grizzly's sixth claim is for "Intentional Interference with Prospective Economic Advantage/ Inducing Breach of Contract." Dkt. 1 at 13–14. It alleges that "Policy 36 and the ability to interfere and suspend Washington State Septic Inspectors from working caused the termination of numerous contractual relationships" between it and "Washington State residents needing septic services." *Id*. ¶ 7.29. It adds that defendants' "interference was improper and criminal as public funds were used for private profit." *Id*. ¶ 7.30. Defendants argue that Grizzly fails to allege what contracts they interfered with or how. They emphasize that Grizzly cannot explain "how the enactment of Policy 36 could have possibly caused a septic system owner to choose a different septic inspector or choose not to have inspections." Dkt. 23 at 15; *see also* Dkt. 22 at 19.

To plead tortious interference with a contractual relationship or business expectancy a plaintiff must satisfy five elements:

> (1) [T]he existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage.

*Tacoma Auto Mall, Inc. v. Nissan N. Am., Inc.*, 169 Wn. App. 111, 132 (2012). Grizzly fails to plead what contracts or business expectancy existed, or how any defendant "interfered" with the same. Instead, it merely provides "threadbare recitals of the elements of the cause of action, supported by mere conclusory statements" prohibited under *Twombly* and *Iqbal*. This warrants dismissal of count VI.

**7.     Grizzly fails to plausibly allege fraudulent misrepresentation (Count VII).**

Grizzly's claim for fraudulent misrepresentation alleges that "Defendants represented through its public officers and employees that funds paid for contract maintenance fees would be for KPHD purposes" but that "[s]ince KPHD's adoption of Policy 36, Plaintiffs and Washington State residents did not know the fees paid were not for public use but rather for private profit." Dkt. 1 at ¶ 7.31–32. Defendants argue that Grizzly fails to meet any of the nine elements necessary to plead fraudulent misrepresentation. Dkt. 22 at 20; Dkt. 23 at 16.

The nine elements of fraudulent misrepresentation are: (1) a representation of an existing fact; (2) the factual representation was material; (3) it was false; (4) Defendant knew it was false; (5) Defendant intended that Plaintiff act on the false representation; (6) Plaintiff was ignorant of the falsity of the representation; (7) Plaintiff relied on the false representation; (8) Plaintiff had a right to rely on the representation; and (9) Plaintiff suffered damages due to his reliance on the false representation. *Westby v. Gorsuch*, 112 Wn. App. 558, 570 (2002). Because it alleges fraud, plaintiffs must plead 'the who, what, when, where and how's of the misconduct charged." *Bes*, 317 F.3d at 1106.

Grizzly falls well short of that heightened burden. It fails to allege that any defendant made any representation of fact to it, let alone that the representation was material, false, or known to be false. Furthermore, Grizzly fails to address the fact that Exhibit 16 to the complaint reveals that KPHD, not defendants or private companies, received the contract fee.

## III.  ORDER

Grizzly plainly lacks standing, and its claims are at best threadbare and at times nonsensical. The Court is persuaded that Grizzly cannot amend its complaint to articulate an injury sufficient for standing. That, and the pervasive failure to meet basic threshold requirements for the statutes it sues under, supports that amendment would be futile. It is hereby **ORDERED** that defendants' motions to dismiss, Dkts. 22 and 23, are **GRANTED.** The Court dismisses this case **without prejudice and without leave to amend**. *Cook*, 911 F.2d at 247.

The Clerk shall enter a **JUDGMENT** and close this case.

Dated this 13th day of January, 2025.

BENJAMIN H. SETTLE
United States District Judge